# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NORTHEASTERN DIVISION

| | |
|---|---|
| RONIA STEELE, )<br>)<br>Plaintiff, )<br>) Civil Action No. 2:09-cv-0063<br>v. ) Judge Wiseman / Knowles<br>)<br>MICHAEL ASTRUE, )<br>Commissioner of Social Security )<br>)<br>Defendant. ) | |

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), to obtain judicial review of the final decision of the Commissioner of Social Security finding that Plaintiff was not disabled and denying Plaintiff Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), as provided under the Social Security Act ("the Act"), as amended. The case is currently pending on Plaintiff's Motion for Judgement on the Pleadings. Docket No. 14. Defendant has filed a Motion for Judgment on the Administrative Record and supporting Memorandum of Law, which the Court will construe as a Response, arguing that the decision of the Commissioner was supported by substantial evidence and should be affirmed. Docket Nos. 18 and 19. Plaintiff has filed a Response to Defendant's Motion, which the Court will construe as a Reply. Docket No. 20.

For the reasons stated below, the undersigned recommends that Plaintiff's Motion for Judgement on the Pleadings be DENIED, and that the decision of the Commissioner be

1

AFIRMED.

## I. INTRODUCTION

Plaintiff filed her application for DIB on April 22, 2005, and her application for SSI on April 5, 2005, alleging that she had been disabled since August 1, 2004, due to low back pain, diabetes mellitus, congestive heart failure, chronic obstructive pulmonary disease ("COPD"), obesity, depression, and anxiety. Docket No. 12, Attachment ("TR"), TR 13, 81, 115, 151-52. Plaintiff's applications were denied both initially (23, 24) and upon reconsideration (21, 22). Plaintiff subsequently requested (TR 61) and received (TR 37) a hearing. Plaintiff's hearing was conducted on April 14, 2008, by Administrative Law Judge ("ALJ") Jack B. Williams. TR 464. Plaintiff and vocational expert ("VE"), Anne B. Thomas, appeared and testified. *Id.*

On May 26, 2008, the ALJ issued a decision unfavorable to Plaintiff, finding that Plaintiff was not disabled within the meaning of the Social Security Act and Regulations. TR 8-20. Specifically, the ALJ made the following findings of fact:

1. The claimant met the insured status requirements of the Social Security Act through March 31, 2007.

2. The claimant has not engaged in substantial gainful activity since January 1, 2004, the alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq*,. 416.920(b) and 416.971 *et seq*.).

3. The claimant has the following severe impairments: low back pain; diabetes mellitus; congestive heart failure; chronic obstructive pulmonary disease (COPD); obesity; depression, and anxiety (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526,

2

416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a reduced range of sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) due to moderate degenerative back changes with no history of back surgery. She is treated by diet alone for her diabetes mellitus. She can stand/walk 2 hours during an 8-hour workday and sitting is not limited. She has major depressive disorder, moderate; anxiety disorder with panic attacks occasionally. Her moderate mental limitations or less preclude highly complex jobs, but not simple instructions or non-complex tasks.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on November 3, 1959 and was 44 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 404.1568 and 416.968).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

11. The claimant has not been under a disability, as defined in the Social Securiy Act, from January 1, 2004 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

TR 13-20.

On July 9, 2008, Plaintiff timely filed a request for review of the hearing decision. TR 6-

3

7. On March 13, 2009, the Appeals Council issued a letter declining to review the case (TR 2-4), thereby rendering the decision of the ALJ the final decision of the Commissioner. This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. §§ 405(g) and 1383(c)(3). If the Commissioner's findings are supported by substantial evidence, based upon the record as a whole, then these findings are conclusive. *Id.*

## II. REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of Record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## III. CONCLUSIONS OF LAW

### A. Standards of Review

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. *Jones v. Secretary*, 945 F.2d 1365, 1369 (6th Cir. 1991). The purpose of this review is to determine (1) whether substantial evidence exists in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision. *Landsaw v. Secretary*, 803 F.2d 211, 213 (6th Cir. 1986).

"Substantial evidence" means "such relevant evidence as a reasonable mind would accept as adequate to support the conclusion." *Her v. Commissioner*, 203 F.3d 388, 389 (6th Cir. 1999) (*citing Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "Substantial evidence" has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Commissioner,* 105 F.3d 244, 245 (6th Cir. 1996) (*citing Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)).

4

The reviewing court does not substitute its findings of fact for those of the Commissioner if substantial evidence supports the Commissioner's findings and inferences. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). In fact, even if the evidence could also support a different conclusion, the decision of the Administrative Law Judge must stand if substantial evidence supports the conclusion reached. *Her*, 203 F.3d at 389 (*citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). If the Commissioner did not consider the record as a whole, however, the Commissioner's conclusion is undermined. *Hurst v. Secretary*, 753 F.2d 517, 519 (6th Cir. 1985) (*citing Allen v. Califano,* 613 F.2d 139, 145 (6th Cir. 1980) (*citing Futernick v. Richardson,* 484 F.2d 647 (6th Cir. 1973))).

In reviewing the decisions of the Commissioner, courts look to four types of evidence: (1) objective medical findings regarding Plaintiff's condition; (2) diagnosis and opinions of medical experts; (3) subjective evidence of Plaintiff's condition; and (4) Plaintiff's age, education, and work experience. *Miracle v. Celebrezze*, 351 F.2d 361, 374 (6th Cir. 1965).

## B. Proceedings At The Administrative Level

The claimant carries the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "Substantial gainful activity" not only includes previous work performed by Plaintiff, but also, considering Plaintiff's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which Plaintiff lives, or whether a specific job vacancy exists, or whether Plaintiff would be hired if he

5

or she applied. 42 U.S.C. § 423(d)(2)(A).

At the administrative level of review, the claimant's case is considered under a five-step sequential evaluation process as follows:

> (1) If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.
>
> (2) If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.
>
> (3) If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments[1] or its equivalent. If a listing is met or equaled, benefits are owing without further inquiry.
>
> (4) If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (e.g., what the claimant can still do despite his or her limitations). By showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a *prima facie* case of disability.
>
> (5) Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner to establish the claimant's ability to work by proving the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and residual functional capacity.

20 C.F.R. §§ 404.1520, 416.920 (footnote added). *See also Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

The Commissioner's burden at the fifth step of the evaluation process can be satisfied by relying on the medical-vocational guidelines, otherwise known as "the grid," but only if the

---

[1] The Listing of Impairments is found at 20 C.F.R., Pt. 404, Subpt. P, App. 1.

6

Case 2:09-cv-00063  Document 21  Filed 06/22/10  Page 6 of 19 PageID #: 80

claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. Otherwise, the grid cannot be used to direct a conclusion, but only as a guide to the disability determination. *Id.* In such cases where the grid does not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's *prima facie* case by coming forward with particularized proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert testimony. *See Varley v. Secretary*, 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity for purposes of the analysis required at stages four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments; mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C. § 423(d)(2)(B).

## C. Plaintiff's Statement Of Errors

Plaintiff contends that the ALJ: (1) erred by giving "great weight" to a physical assessment that is inconsistent with Plaintiff's actual treatment record; (2) failed to follow the requirements of 20 C.F.R. § 404.1530 in determining that Plaintiff's claims were not credible due to failure-to-follow-prescribed-treatment; and (3) declined to apply the two-step *Duncan* analysis[2] to assess Plaintiff's pain allegations. Docket No. 15. Accordingly, Plaintiff maintains that, pursuant to 42 U.S.C. § 405(g), the Commissioner's decision should be reversed, or in the alternative, remanded. *Id.*

---

[2] *See Duncan v. Secretary of Health and Human Services,* 801 F.2d 847 (6th Cir. 1986), discussed infra at 14.

7

Sentence four of § 405(g) states as follows:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. §§ 405(g), 1383(c)(3).

"In cases where there is an adequate record, the Secretary's decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits. *Faucher v. Secretary*, 17 F.3d 171, 176 (6th Cir. 1994). *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (1994).

**1. The ALJ erred in giving "great weight" to a physical assessment of Plaintiff that is inconsistent with Plaintiff's actual treatment record.**

Plaintiff argues that the ALJ erred in relying on D.D.S. consultant Denise P. Bell's medical opinion, because that opinion is inconsistent with Plaintiff's treatment record. Docket No. 20. Specifically, Plaintiff takes issue with Dr. Bell's report, which states, *inter alia*, that Plaintiff 's "Primary Diagnosis" was "S/P Left Total Knee Replacement." TR 23-24. Plaintiff argues that the ALJ's reliance on Dr. Bell's report was erroneous because there is no indication in the record that Plaintiff ever underwent a left total knee replacement. Docket No. 15; TR 485-486. Plaintiff also takes issue with the fact that Dr. Bell indicated in her report that her findings were "significantly different" from a "Dr. Surber," whose name does not appear anywhere in the record. Docket No. 20, *citing* TR 351. Plaintiff further takes issue with Dr. Bell's reference to a

8

"CE" that is likewise absent from the record. *Id.*, *citing* TR 352. Plaintiff argues therefore, that the ALJ's findings of fact constitute reversible error because they were based on information not included in Plaintiff's medical record. Docket No. 20.

Defendant acknowledges Dr. Bell's "apparently incorrect reference to a knee replacement," but argues that it is harmless error because the remainder of Dr. Bell's report accurately accounts for Plaintiff's other ailments.[3] Docket No. 19. Defendant also argues that, because the ALJ determined that Plaintiff's conditions were "severe," Plaintiff was not prejudiced by an incorrect statement regarding a knee replacement.[4] *Id.*

Plaintiff is correct that no other evidence of a knee replacement, Dr. Surber, or the "CE" in question, appears in the record. Contrary to Plaintiff's assertions, however, the ALJ did not "base his denial" on Plaintiff's knee replacement, Dr. Surber's opinion, or the referenced "CE." *See* TR 15-18. Plaintiff's "knee replacement" was simply one of a multitude of ailments considered by the ALJ.[5] *Id.* Even though Dr. Bell's report contained some erroneous information, as will be discussed in greater detail below, substantial evidence still exists to support the ALJ's decision. *Id.*

Plaintiff also argues that, given the mistakes in Dr. Bell's report, without supporting evidence in the medical record, there is no way to know whether Plaintiff was the subject of Dr.

---

[3]Defendant did not address the fact that Dr. Bell's report also referenced a Dr. Surber and "CE," neither of which appear in the record. *See* Docket No. 19.

[4]Defendant observes that, if Plaintiff had undergone a knee replacement, that would only strengthen Plaintiff's disability claim. Docket No. 19.

[5]The ALJ was aware that Plaintiff had not had knee surgery, having asked about it during the hearing. TR 485-486. It is unclear why the ALJ referenced the knee replacement in his decision.

9

Bell's report. Docket Nos. 15, 20. While Plaintiff is correct that Dr. Bell's report references information not found in the record, the specific physical ailments listed in Dr. Bell's report, with the exception of the knee replacement, directly correspond with Plaintiff's other claimed ailments. *Compare* TR 352, *with e.g.*, TR 25, 115, 132, 163, 209. For example, in the "Additional Comments" section of her report, Dr. Bell notes spine, disc, thyroid, stomach, hernia, back pain, knee replacement, hemorrhoids, and credible pain. TR 352. Additionally, the Explanation of Determination states that Plaintiff had "back pain, depression, anxiety, thyroid and stomach problems and a hernia." TR 25. Likewise, on a Disability Report, Plaintiff stated in a section headed in part "Illnesses, Injuries or Conditions" that she suffered from "[d]eterioration of spine/ bulging disc/ depression/ anxiety disorder/ thyroid and stomach problems/ nerves/ hernia." TR 115. Plaintiff again listed a combination of these ailments in a Disability Report Appeal. TR 132. Moreover, Dr. Bell's assessment of Plaintiff's postural limitations mirrors those found by Examiner Michael Headrick. *Compare* TR 139, *with* TR 347.

Even if the ALJ had not considered Dr. Bell's report or accorded it any weight, substantial evidence exists in the record to support the ALJ's decision. As explained above, "substantial evidence" means "such relevant evidence as a reasonable mind would accept as adequate to support the conclusion," *Her*, 203 F.3d at 389 (*citing Richardson*, 402 U.S. at 401), and has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." *Bell,* 105 F.3d at 245 (*citing Consolidated Edison Co.,* 305 U.S. at 229).

The record here is replete with evidence supporting the ALJ's ultimate determination that Plaintiff was not disabled within the meaning of the Act. For example, Plaintiff indicated on a Work Activity Report that she had quit her last job in August, 2004 to care for her ailing

10

husband, not for health reasons. TR 101. On that form, Plaintiff had the option to check a box indicating that she stopped working "because of my medical condition." *Id.* Plaintiff instead checked a box stating that she stopped working "for other reasons," namely, to care for her husband. *Id.* Plaintiff also reported that she has been disabled since August 1, 2004, which is before the "09/2004" date she listed on the Work Activity Report as her last day of employment.[6] TR 109. By her own report, Plaintiff continued to work after her alleged onset of disability. *Id.* Additionally, in her Disability Report, Plaintiff indicated that her conditions did not cause her to work fewer hours, change job duties, or even change her attendance. TR 116.

Further evidence supporting the ALJ's determination is the fact that a psychiatric consultant found that Plaintiff's allegations were only "partially credible." TR 365. The consultant acknowledged that Plaintiff had a mental disorder, but opined that a "preponderance of evidence" indicated that the "degree of function limitation associated with the cl[aimant]'s condition" was only moderate. *Id.* The consultant also deemed Plaintiff's depression to be moderate, and noted improvement in her mood, ability to sleep, and anxiety. *Id.* The consultant further reported that Plaintiff's "[p]anic attacks [are] under control by medications." *Id.* This assessment is corroborated by a Psychiatric Evaluation report which states that Plaintiff's mood is "within normal limits," that she is "alert and oriented," and that her "attention span and concentration are intact" (TR 184-185), and by an interviewer who wrote that Plaintiff displayed no difficulty understanding, concentrating, communicating coherently, hearing, talking, or answering (TR 112).

---

[6] Plaintiff states on another form, found on TR 116, that her last day of work was Aug. 3, 2004, which was still past her claimed date of disability.

11

Moreover, Plaintiff's claims of significant social limitations are unsupported in the record as well. The record repeatedly indicates that Plaintiff presents herself well in public. TR 17, 112, 184-185, 343, 468-488. The ALJ observed that Plaintiff was sociable during the hearing, and fully able to interact with the staff. TR 17; *see also* TR 468-488. The interviewer for Plaintiff's Disability Report wrote that "[c]laimant was polite and cooperative." TR 112. Plaintiff's Psychiatric Evaluation indicates that she is "neatly dressed and groomed," "cooperative toward the examiner," and "shows sound judgment and insight." TR 184-185. Plaintiff is elsewhere described in the record as a "pleasant lady." TR 343. Plaintiff remarried in 2006, and frequently interacts with friends. TR 365, 479. Her father, who has Alzheimer's disease, lives with her, and she is partially responsible for his care. TR 480-481. Plaintiff's Mental Residual Functional Capacity Assessment found that she was no more than "moderately limited" in her social interaction. TR 368.

Plaintiff also stated on a Disability Report that she experienced no side effects from her medications. TR 120. The medications listed were medications for both physical and mental conditions. *Id.*

Additionally, the record reflects that no physician has ever recommended restrictions for Plaintiff that are congruent with the level of disability she claims. Specifically, the record reflects that neither Dr. Marasigan, nor any other physician, recommended restrictions for Plaintiff beyond continuing her current medications. *See, e.g.*, TR 210, 213-14, 232, 252, 255 (Plaintiff was admitted to the hospital in May, 2007 because she felt pain that she listed as "10" when she walked, but was discharged three days later with no recommendation beyond "continue current prescriptions.").

As has been noted, the reviewing court does not substitute its findings for those of the Commissioner if substantial evidence supports the Commissioner's findings and inferences. *Garner*, 745 F.2d at 387. In fact, even if the evidence could also support a different conclusion, the decision of the Administrative Law Judge must stand if substantial evidence supports the conclusion reached. *Her*, 203 F.3d at 389 (*citing Key*, 109 F.3d at 273). As has been demonstrated, the ALJ's decision was properly supported by "substantial evidence"; the ALJ's decision, therefore, must stand.

## 2. The ALJ failed to follow the requirements of 20 C.F.R. § 404.1530 in determining that Plaintiff's claims were not credible as a result of her failure-to-follow-prescribed-treatment.

Plaintiff argues that reversal or remand is required because the ALJ did not follow proper procedure in determining that Plaintiff's claims were not credible because of her failure to follow her prescribed treatment. Docket No. 15. 20 C.F.R § 404.1530(a) states that, "In order to get benefits, you must follow treatment prescribed by your physician if this treatment can restore your ability to work." But 20 C.F.R. § 404.1530(b) also states, "If you do not follow the prescribed treatment without a good reason, we will not find you disabled. . . ." Plaintiff argues that this case must be remanded because the ALJ did not consider whether stopping smoking would have allowed Plaintiff to return to work, per section (a), or whether she had a "good reason" not to follow her physician's recommendation, per section (b). Docket No. 15.

As an initial matter, the ALJ's determination that Plaintiff's claims were not credible was not based solely on the fact that Plaintiff continued to smoke after her physician told her to stop. Plaintiff's failure to cease smoking, despite her physician's recommendation, was a consideration that occupied merely four lines of a two page discussion on Plaintiff's lack of credibility. *Compare* TR 18, *with* TR 17-18. The ALJ's determination that Plaintiff's claims

13

lacked credibility was instead based on numerous other facts that call into question Plaintiff's credibility, including the facts that her medications were apparently working, that she did not quit her last job for medical reasons, that her psychological limitations were only moderate, that she was able to stand, sit, and bend, and that no physician had placed a restriction on her that was congruent with her claimed impairment. *See* TR 17-18. As demonstrated, the ALJ's assessment of Plaintiff's credibility was based on a myriad of factors, all of which constitute substantial evidence supporting the ALJ's determination. Based on the evidence considered, the ALJ's credibility determination would not change even if he omitted the fact that Plaintiff continued to smoke despite her physician's recommendation to stop. *Id.*

### 3. The ALJ declined to apply the two-step *Duncan* analysis to assess Plaintiff's pain allegations.

Plaintiff argues that by failing to follow the two-step test found in *Duncan v. Secretary of Health and Human Services*, the ALJ did not properly analyze Plaintiff's complaints of pain. 801 F.2d 847, 853 (6th Cir. 1986) (holding that if objective evidence of an underlying medical condition exists, the court will examine: (1) whether objective medical evidence supports the severity of the condition; and (2) whether the medical condition could reasonably produce the level of pain alleged). Docket No. 15. Plaintiff concedes, however, that an ALJ who follows the requirements of 20 C.F.R. § 404.1529 and *Social Security Ruling* (SSR) 96-7p does not have to explicitly follow the two-step *Duncan* analysis. *Id.* Plaintiff quotes SSR 96-7p, which states:

> 4. In determining the credibility of the individual's statements, the adjudicator must consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the relevant evidence in the case record. An individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded

14

> solely because they are not substantiated by objective medical evidence**.**
>
> 5. It is not sufficient for the adjudicator to make a single, conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." . . . The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

*Soc. Sec. Rul. 96-7p*, 1996 WL 374186, *1-2 (July 2, 1996).

Plaintiff is correct that an ALJ must consider the entire record, and that an individual's statements may not be dismissed solely because they are not supported by objective findings. *Hurst*, 753 F.2d at 519 (*citing Allen*, 613 F.2d at 145 (*citing Futernick*, 484 F.2d 647)); *Soc. Sec. Rul. 97-6p*, 1996 WL 374186, at *1-2. Plaintiff is also correct that "[i]f an ALJ rejects a claimant's testimony as incredible, he must clearly state his reasons for doing so." Docket No. 15, *citing Auer v. Secretary of Health and Human Services*, 830 F.2d 594, 595 (6th Cir. 1987) ("[T]he administrative law judge cited very specific examples of [the claimant's] lack of credibility on certain issues . . . "). Plaintiff argues, however, that "[n]othing in the record or in the ALJ's decision supports a discounting of the Plaintiff's credibility." Docket No. 15.

Despite Plaintiff's assertions, Plaintiff does not demonstrate that the ALJ failed to properly assess Plaintiff's credibility. To the contrary, the ALJ was very specific about the reasons he found Plaintiff's claims to be incredible. TR. 17-18. The ALJ cited discrepancies between Plaintiff's statements and Plaintiff's medical records, the fact that she had quit her last job not for health reasons but to care for her ailing husband, a lack of evidence of side effects to any medicine, her statements to a mental health therapist in 2005 that her panic attacks were under control because of her medication, psychological limitations that were merely mild to

15

moderate, the fact that she remarried in 2006 and frequently interacted with friends despite her claimed social limitations, the fact that she presented herself well at the hearing, and lastly, the fact that no doctor had placed any medical restriction on her despite her numerous ailments. *Id.*

Plaintiff's assertion that "[n]othing in the record or in the ALJ's decision supports a discounting of Plaintiff's credibility" (Docket No. 15) is contrary to the specific evidence discussed above. *See* TR 17-18. Moreover, the ALJ's opinion indicates that he was aware of Plaintiff's conditions, and took her conditions into account, as required by SSR 96-7. TR 13-16. The ALJ's decision demonstrates that he complied with both SSR 96-7p and *Auer* in determining that Plaintiff's allegations were not credible.

Additionally, the ALJ's findings regarding a claimant's credibility are to be accorded great weight and deference, particularly because the ALJ is charged with the duty of observing the claimant's demeanor and credibility. *Walters,* 127 F.3d at 531 (*citing Villarreal v. Secretary,* 818 F.2d 461, 463 (6th Cir. 1987)). Discounting credibility is appropriate when the ALJ finds contradictions among the medical reports, the claimant's testimony, the claimant's daily activities, and other evidence. *See id, citing Bradley,* 682 F.2d at 1227; *cf King v. Heckler*, 742 F.2d 968, 974-75 (6th Cir. 1984); and *Siterlet v. Secretary*, 823 F.2d 918, 921 (6th Cir. 1987). As has been demonstrated above, the ALJ discussed numerous factors that contradicted Plaintiff's allegations before ultimately finding that Plaintiff's allegations were not credible. This determination was within the ALJ's province.

Plaintiff also maintains that the ALJ's determination was the result of "what is *not* in the record, rather than what is in the record." Docket No. 15. This claim stems from the ALJ's

16

assertion that "[n]o treating or examining physician has suggested the presence of any impairment or combination of impairments of listing level severity." TR 14. The law directs the ALJ to consider whether any treating physician has noted the presence of any impairment or combination of impairments that may be of listing level severity. 20 C.F.R. § 404.1520(a)(4)(iii). If the ailments found in the record do not rise to listing level severity, as the ALJ concluded in this case, the ALJ is necessarily entitled to conclude from the absence of restrictions, recommended treatment, prescribed medication, and the like, that the plaintiff is not disabled.

Plaintiff further argues that the ALJ's decision to "dismiss[] obesity as an aggravating factor" is a "flippant" assumption. Docket No. 15, *citing* TR 15-16. Plaintiff cites SSR 02-1p for support, which states: "[W]e will not make assumptions about the severity or functional effects of obesity combined with other impairments." *Soc. Sec. Rul.* 02-1p, 2000 WL 628049, *6 (Sept. 12, 2002). Plaintiff omits the next line of the regulation, however, which states that each case will be evaluated based on "information in the case record." *Id.* The ALJ's assessment that Plaintiff's obesity did not "negatively impact function or cause mechanical limitation" and did not adversely affect her ability to walk, sit, stand, move about, turn, twist, bend, and lift is supported by the record. A Vocational Analysis Worksheet from November, 2005, states that Plaintiff has the ability to "occasionally" climb stairs, ramps, and ladders, balance, stoop, kneel, crouch, and crawl. TR 139; *see also* TR 345-347.

Additionally, although the record contains numerous medical reports explaining Plaintiff's ailments, obesity is rarely mentioned, and physicians seldom made direct reference to it. *See e.g.*, TR 70, 115, 132, 136, 151-152, 163-164, 263, 280. Progress Notes from Dr.

17

Marasigan in May and June, 2007 state that Plaintiff is "obese," but in the "Plan" section of these documents, Dr. Marasigan does not propose treatment for Plaintiff's obesity. TR 209-210, 213-214. Dr. Marasigan does recommend that Plaintiff "diet and exercise," but this was in reference to treatment for Plaintiff's diabetes. TR 210. Similarly, in a Discharge Summary from June, 2007, the hospital noted that Plaintiff, who was admitted for other reasons, had gained around twenty pounds within a few weeks before admittance. TR 228. The hospital also noted, however, that Plaintiff had lost ten pounds during her three days in the hospital. *Id.* Additionally, the treating physician's "Assessment and Plan" included no mention of Plaintiff's weight. TR 232. Lastly, Dr. Deborah Johnson's notes from her individual therapy with Plaintiff state that the two "discussed healthy lifestyle information." TR 450, 453. The notes do not mention weight, or obesity. The ALJ's determination that obesity was not an aggravating factor was based on information in the record, as required by SSR 02-1p.

Furthermore, the Sixth Circuit has rejected the notion that any specific procedure is required to determine that obesity is not an aggravating factor:

> Social Security Ruling 02-1p does not mandate a particular mode of analysis. It only states that obesity, in combination with other impairments, "may" increase the severity of the other limitations. It is a mischaracterization to suggest that Social Security Ruling 02-1p offers any particular procedural mode of analysis for obese disability claims.

*Bledsoe v. Barnhart*, No. 04-4531, 2006 WL 229795, at *3 (6th Cir. Jan. 31, 2006). The ALJ is not required to perform a "sequential evaluation" before determining that obesity is not an aggravating factor. *See* Docket No. 15. The ALJ's assessment was proper; obesity was one small part of the ALJ's decision; and, as has been demonstrated, substantial evidence supports the ALJ's ruling. *See* TR 15-18. The ALJ's ruling, therefore, must stand.

18

## IV. RECOMMENDATION

For the reasons discussed above, the undersigned recommends that Plaintiff's Motion for Judgment on the Pleadings be DENIED, and that the decision of the Commissioner be AFFIRMED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

E. CLIFTON KNOWLES
United States Magistrate Judge